UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIMBERLY J. DAISHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:01-CV-1059 (RJL) |
| | ) |
| NORMAN Y. MINETA, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(February 23, 2006)[#54]

Plaintiff, a female officer in the United States Coast Guard, filed the instant action on May 15, 2001, against defendants Norman Mineta, Secretary of the United States Department of Transportation, and James Loy, Admiral Commandant of the United States Coast Guard ("USCG"), seeking, in essence, to re-litigate the same issues she had alleged in an earlier complaint which was filed before and decided on January 12, 2000 by Judge Lamberth of this Court. Before this Court is defendants' Renewed Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 41(b). For the following reasons, the Court GRANTS the defendant's Renewed Motion to Dismiss.

## FACTUAL BACKGROUND

On May 15, 2001, plaintiff filed the instant Complaint, along with a Motion for a Temporary Restraining Order and a Motion for a Preliminary Injunction, which were both subsequently denied by yet another Judge of this Court.[1] Plaintiff's claims stem from a series

---

[1] This is the second action that plaintiff has filed against these defendants. *See* 99-CV-222 (RCL). The earlier action which alleged gender discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, was dismissed by Judge Lamberth on January 12, 2000, on the grounds that Title VII does not apply to uniformed members of the armed services and that plaintiff therefore failed to

of acts on the part of her employer that allegedly occurred between 1994 and 2000. At all times relevant to this case, plaintiff was a Lieutenant Commander in the United States Coast Guard. (Compl., ¶ 8.) Plaintiff asserts that while working at the South Florida Regional Office of the Coast Guard during 1994 and 1995, she received a disproportionately higher share of the workload than males in the office, she was exposed to anti-female remarks from her supervisor, Commander Robert Porter, during meetings, and that Commander Porter consistently gave her lower performance ratings than her male co-workers. (*Id.* ¶ 10-16). Plaintiff discussed what she perceived as a hostile work environment with senior members in her command, but no action was taken against her supervisor. (*Id.* ¶ 18, 20.) Plaintiff asserts that the Coast Guard did not fully investigate her grievances and that she was not allowed to file a formal discrimination complaint until 1997. (*Id.* ¶ 22-23.) In August 1997, plaintiff learned that she was denied a promotion to Commander. (*Id.* ¶ 37.) In September 1997, plaintiff filed a second formal discrimination complaint. (*Id.* ¶ 38.) After investigating the matter, the Department of Transportation's Office of Civil Rights ultimately issued a report and proposed final decision denying plaintiff's claims in December 1999. (*Id.* ¶ 48.)

Meanwhile, in July 1998, plaintiff was transferred to the Coast Guard base in Honolulu, Hawaii. (*Id.* ¶ 52.) In April 2000, plaintiff's supervisor, Captain Katherine Kelly, issued an evaluation that plaintiff deemed to be unfair and thus inquired whether the evaluation was affected by plaintiff's prior discrimination and retaliation complaints. (*Id.* ¶ 57-58.) Three months later, plaintiff was informed that due to a reorganization plan, her

---

state a claim upon which relief could be granted. Many of the factual allegations that appear in the present complaint also appeared in plaintiff's first complaint.

2

position at the Coast Guard base in Hawaii would be abolished effective September 2000. (*Id.* ¶ 59.) Plaintiff argues that this was in retaliation for her discrimination complaints. (*Id.* ¶ 60.)

In October 2000, plaintiff underwent a fitness of duty exam with a Navy psychologist. (*Id.* ¶ 62.) Based on the psychologist's diagnosis of a delusional disorder, plaintiff was recommended for transfer from the active duty in the USCG to the Temporary Disability Retired List ("TDRL"). (*Id.* ¶¶ 62-63.) Prior to the transfer, plaintiff filed this action. In her complaint, plaintiff challenges the decision to place her on the TDRL on the grounds that: (1) her First Amendment right to speech was violated because she was placed on the TDRL as retaliation for her earlier discrimination complaint; and (2) her Fifth Amendment rights were violated by virtue of the USCG procedures used to evaluate her mental condition, determining her fitness for duty, and placing her on the TDRL. (*Id.* ¶¶ 72-78.)

On November 30, 2001, this Court ordered an independent medical evaluation of the plaintiff in order to determine plaintiff's fitness for duty and to determine whether she should be restored to active duty or retired. (Dkt. # 26.) Plaintiff failed to appear for this evaluation and the Court ordered plaintiff to reschedule the examination on January 30, 2003. (Dkt. # 44.) Four months later, plaintiff was finally examined. (*See* Defs.' Am. Status Report at 2.) The report of that exam was completed on June 25, 2003, and reviewed thereafter by the Coat Guard Central Physical Evaluation Board ("CGCPEB"). (*Id.*) As a result, plaintiff was placed on the Permanently Disabled Retired List ("PDRL") and her disability rating was lowered from 75% to 50%. (*Id.*) The CGCPEB determined that plaintiff's transfer to the

3

PDRL was valid and upheld the Physical Evaluation System's determination. (*Id.* at 3.) According to defendants, plaintiff was afforded the opportunity to challenge the medical board's findings and has had the opportunity to appeal the Coast Guard's Physical Disability Evaluation System decision through the Board for Correction of Military Records, but so far has failed to do so. (*Id.*) Plaintiff has been permanently retired from the USCG as of March 10, 2004. (*Id.*)

## ANALYSIS

### I.  Standard of Review

Federal courts are courts of limited jurisdiction, possessing only those powers specifically granted to them by either the United States Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If a court determines that it lacks subject matter jurisdiction to hear and decide a claim, the claim must be dismissed. FED. R. CIV. P. 12(b)(1). On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has jurisdiction. *D.C. Retirement Bd. v. United States*, 657 F. Supp. 428, 431 (D.D.C. 1987). "In deciding on such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs. However, the court need not accept as true the plaintiffs' legal conclusions." *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999) (citation omitted). Finally, in resolving a motion to dismiss under Rule 12(b)(1), a court may consider materials outside the pleadings. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 625 n.3 (D.C. Cir. 1997); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

One of the issues raised by the motion to dismiss is whether this Court has subject matter jurisdiction over constitutional claims brought by an active member of the Coast Guard against her employer.[2] (Def.'s Renewed. Mot. to Dismiss at 1.) For the following reasons, this Court concludes that it lacks subject matter jurisdiction and must therefore dismiss the complaint.

## II.   The *Feres* Doctrine

In *Feres v. United States*, the Supreme Court held "that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. 135, 146 (1950). The applicability of *Feres* was subsequently extended to claims of alleged constitutional violations made by a service member against his or her superiors.[3] *United States v. Stanley*, 483 U.S. 669, 683-84 (1987); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983). The rationale of *Feres* and its progeny is based "primarily on the 'peculiar and special relationship of the soldier to his superiors, and the effects of the maintenance of such suits on discipline.'" *Bois*

---

[2]   A motion to dismiss a claim on the grounds that it is barred by the *Feres* doctrine may be raised a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Compare Chandler v. Roche*, 215 F. Supp. 2d 166 (D.D.C. 2002) (dismissing under 12(b)(6)), *with Antoine v. United States*, 791 F. Supp. 304 (D.D.C. 1992) (dismissing under 12(b)(1)).

[3]   Plaintiff cites case law to support the proposition that "[m]ilitary members have long used the courts to vindicate their constitutional rights." (Pl.'s Mem. Opp. Mot. Dismiss at 5.) However, these cases are not on point because they deal with challenges to the constitutionality of regulations and statutes that govern the conduct of service members rather than the constitutionality of military personnel decisions. For example, *Brown v. Glines*, 444 U.S. 348 (1980), does not implicate *Feres* because the defendant was challenging an Air Force regulation and not the actions of a superior officer. Similarly, *Parker v. Levy*, 417 U.S. 733 (1974), was a challenge to a provision of the Uniform Code of Military Justice. Additionally, all of the cases cited by plaintiff to support this argument predate the Court's decision on constitutional suits in *Stanley* and *Chappell*.

*v. Marsh*, 801 F.2d 462, 469 (D.C. Cir. 1986) (quoting *United States v. Brown*, 348 U.S. 110, 112 (1954)). The Supreme Court stated that, "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessary unique structure of the military establishment." *Chappell*, 462 U.S. at 300. Additionally, "Congress . . . has not provided a damage remedy for claims by military personnel that constitutional rights have been violated by superior officers. Any action to provide a judicial response by way of such a remedy would be plainly inconsistent with Congress' authority in this field." *Id.* at 304. Accordingly, for the following reasons, even if all of the allegations contained in plaintiff's complaint are true, she is precluded from bringing her claims against these defendants because the claims are barred by the *Feres* doctrine.

First, all of the alleged discriminatory and retaliatory acts occurred while plaintiff was on active duty with the United States Coast Guard, first at the South Florida Regional Office and later at the base in Honolulu, Hawaii. Second, the alleged perpetrators of many of these acts were her supervisors or superior officers, Commanders Porter and Kelly, as well as other senior members of her command. Finally, these alleged unconstitutional acts arose from and were incident to plaintiff's service in the Coast Guard. Enlisted military personnel cannot maintain a suit against superior officers for alleged constitutional violations when these violations occur during service in the military or as a result of service in the military. *See Chappell*, 462 U.S. at 305; *see also Stanley*, 483 U.S. at 683-84. The facts underlying

plaintiff's causes of actions clearly satisfy the test set forth in *Feres* and its progeny for barring claims made by a service member against the government and the service member's superior officers.[4]

## CONCLUSION

For the foregoing reasons, the Court GRANTS the defendants' Renewed Motion to Dismiss for lack of subject matter jurisdiction. An order consistent with this Memorandum Opinion is separately and contemporaneously issued herewith.

_____
RICHARD J. LEON
United States District Judge

---

[4] While this Court finds that plaintiff's claims are barred pursuant to the *Feres* doctrine, it should be noted that even if it had jurisdiction over the instant complaint, it should also be dismissed nonetheless for: (1) failure to exhaust administrative remedies as the plaintiff can appeal the Coast Guard's Central Physical Evaluation Board's decision as to her disability pursuant to 10 U.S.C. § 1552(a)(1) within three years of the Board's decision, *see Bois*, 801 F.2d at 467,; and (2) for failure to prosecute or comply with the rules and orders of the Court pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, as plaintiff, who is represented by counsel, has failed *repeatedly* to comply with Court deadlines and, at one point, failed to prosecute this matter for over a year. *See Cherry v. Brown-Frazier-Whitney*, 548 F.2d 965, 969-70 (D.C. Cir. 1976); *Stella v. Mineta*, 231 F.R.D. 44, *46-49 (D.D.C. 2005.